UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

Joanna Burke and John Burke, §
    Plaintiffs, §
 §
v. §   Civil Action H-18-4543
 §
Mark Daniel Hopkins, Shelley §
Hopkins, and Hopkins Law, PLLC, §
    Defendants. §

## MEMORANDUM AND RECOMMENDATION

Pending before the court are the following motions:

- Defendants' Motion to Dismiss Plaintiffs' Complaint (D.E. 28);
- Defendants' Motion to Strike Plaintiffs' Expert Witness Designation (D.E. 38);
- Plaintiffs' Motion to Strike Defendant's Expert Witnesses (D.E. 40);
- Plaintiffs' Motion to Clarify Order (D.E. 54);
- Plaintiffs' Motion and Incorporated Memorandum to Invite the Views of the Attorney General of the United States (D.E. 55);
- Plaintiffs' Motion and Incorporated Memorandum to Invite the Views of the Attorney General for the State of Texas (D.E. 56);
- Plaintiffs' Motion to Stay Proceedings. (D.E. 61.)

The court recommends that Defendants' Motion to Dismiss Plaintiffs' Complaint (D.E. 28) be GRANTED and that this case be DISMISSED with prejudice. All other pending motions are DENIED as MOOT.

## 1. Background and Procedural Posture

Plaintiffs Joanna and John Burke have a long history of litigation relating to a home equity loan they obtained in 2007.[1] Relevant to this case is Civil Action No. 4:11-cv-1658 (S.D. Tex. 2011) wherein Deutsche Bank National Trust Company (Deutsche Bank) sued Joanna and John Burke seeking foreclosure. The case was tried before Magistrate Judge Stephen Smith on February 6, 2015. Judge Smith found in favor of the defendants.

Attorney Mark D. Hopkins, one of the defendants in this case, made his first appearance as counsel for Deutsche Bank on March 31, 2015. Notice of Appearance, *Deutsche Bank Nat'l Trust Co. v. Burke, et al.*, No. 4:11-cv-1658 (S.D. Tex. March 31, 2015), ECF No. 79. He filed the notice of appeal to the Fifth Circuit and litigated several post-trial motions. Attorney Shelley L. Hopkins, another defendant in this case, made her appearance as counsel for Deutsche Bank on June 21, 2016. Notice of Attorney Substitution, *Deutsche Bank Nat'l Trust Co. v. Burke, et al.*, No. 4:11-cv-1658 (S.D. Tex. June 21, 2016), ECF No. 108. Both Mark and Shelley Hopkins served as counsel on appeal. *See Deutsche Bank Nat'l Trust Co. v. Burke, et al.*, No. 15-20201 (5th Cir. 2015).

---

[1] *Burke, et al. v. Geithner*, No. 4:09-cv-2572 (S.D. Tex. 2009); *Burke, et al. v. IndyMac Mortg. Services, et al.*, No. 4:11-cv-341 (S.D. Tex. 2011); *Deutsche Bank Nat'l Trust Co. v. Burke, et al.*, No. 4:11-cv-1658 (S.D. Tex. 2011); *Burke, et al. v. Ocwen Loan Servicing, LLC*, No. 4:18-cv-4544 (S.D. Tex. 2018).

2

The case was reversed and remanded on July 19, 2016. *Deutsche Bank Nat'l Trust Co. v. Burke, et al.*, 655 F. App'x 251 (5th Cir. 2016). After further briefing and hearings, Judge Smith again entered judgment in favor of defendants and Mark Hopkins again filed notice of appeal. *Deutsche Bank Nat'l Trust Co. v. Burke, et al.*, No. H-11-1658, 2017 WL 6523592 (S.D. Tex. Dec. 21, 2017). Mark and Shelley Hopkins again served as appellate counsel. *Deutsche Bank Nat'l Trust Co. v. Burke, et al.*, No. 18-20026 (5th Cir. 2018). The court of appeals reversed and rendered judgment in favor of Deutsche Bank on September 5, 2018. *Deutsche Bank Nat'l Trust Co. v. Burke, et al.*, 902 F.3d 548 (5th Cir. 2018).

The Burkes have now sued Deutsche Bank's appellate counsel—Mark Hopkins, Shelley Hopkins, and Hopkins Law, PLLC. The Burkes' amended complaint (D.E. 27) is, with attachments, 160 pages long. In it, the Burkes discuss their lengthy history of litigation relating to the home equity loan. They discuss the conduct of the litigation in the district court and the court of appeals. They make many accusations against Defendants. The complaint is riddled with irrelevancies. As best the court can tell, the Burkes now claim that Defendants' conduct during the underlying litigation constituted fraud, civil conspiracy, and unjust enrichment, and that it violated both the Texas Debt Collection Act (TDCA) and the Fair Debt Collection Practices Act (FDCPA).

## 2. Standard of Review

A plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). Under Rule 12(b)(6), a complaint that does not allege "enough facts to state a claim to relief that is plausible on its face" should be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, "[r]egardless of how well-pleaded the factual allegations may be, they must demonstrate that the party is entitled to relief under a valid legal theory." *Langen v. Sanchez Oil & Gas Corp.*, No. CV 4:18-2840, 2019 WL 1674348, at *3 (S.D. Tex. Apr. 17, 2019). While a complaint does not require detailed factual allegations, a plaintiff must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

Where an "obvious alternative explanation" provides a more likely reason for the complained-of conduct, the plaintiff's claim does not cross the plausibility threshold. *See Twombly*, 550 U.S. at 567–69 (holding that industry norm and business incentives provided a more plausible explanation for the defendants'

4

noncompetition than the plaintiff's allegation that the defendants conspired to engage in antitrust activity); *Ashcroft v. Iqbal*, 556 U.S. 662, 681–82 (2009) (holding that the plaintiff's allegation of discrimination was not plausible on its face because the government's legitimate, heightened national security interests after 9/11 provided a more likely explanation for the plaintiff's arrest and detention conditions).

The court liberally construes pro se pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Under Rule 15(a) of the Federal Rules of Civil Procedure, when a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint before dismissing the action with prejudice, unless doing so would be futile. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). When considering a motion to dismiss, a court must consider the complaint in its entirety, including documents incorporated by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider "any documents attached to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### 3. Attorney Immunity

Defendants argue that they are immune from suit under the doctrine of attorney immunity. According to the motion to dismiss, all the complained-of conduct took place during prior litigation while Defendants were discharging duties on behalf of their client, Deutsche Bank.

Under Texas law, attorney immunity is a "comprehensive affirmative defense protecting attorneys from liability to non-clients, stemming from the broad declaration . . . that attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017) (internal citation omitted). To prevail on a motion to dismiss based on attorney immunity, the attorney must "conclusively establish that the alleged conduct was within the scope of the attorney's legal representation of the client." *Id.* at 375. A dismissal is appropriate if the scope of the attorney's representation is apparent from the face of the complaint. *Id.*

Courts have considered several exceptions to the doctrine. First, if an attorney's actions are not "the kind of conduct in which an attorney engages when discharging duties to a client," then attorney immunity does not apply. *Kelly*, 868 F.3d at 374. Additionally, if the Texas Legislature expressly abrogates the defense

for a particular statute, attorney immunity will not be available under that statute. *Troice v. Greenberg Traurig, LLP*, 921 F.3d 501, 507 (5th Cir. 2019).

Many of the Burkes' claims stem from this exchange that took place during a 2017 conference in the underlying case:

> Mark Hopkins: I'd also point out to the Court, while the Court only has the aid of the evidence that's before it, the Burkes consistently use the term "employment income." It's not—and I believe the Court may have the perception that this loan was closed with no reflection at all with respect to the Burkes' income. I've had the benefit of reviewing that closing file, which wasn't put in evidence before the Court because the allegations were raised by the Burkes. But it clearly shows that Mrs. Burke has an offshore pension account, foreign bank accounts that she asked be kept strictly confidential, banking relations with Barclay's, Bank of America, Chase and Citi, and credit from Neiman's and Nordstrom's and Jaguar.
>
> The Court: Well, the bank never—the bank had the opportunity at trial to introduce the evidence or to contradict Mr. Burke's testimony and did not, so this is out.

(D.E. 27 at 93.)

During a September 2019 status conference with this court, the Burkes argued that they had complaints about the way that Mark Hopkins acted during the underlying proceedings. (D.E. 52 at 15–16.) During that conference, the court reminded the Burkes that in response to Defendants' motion to dismiss, the Burkes needed to point out actions that Defendants took outside of their roles as lawyers. (D.E. 52 at 34.) The Burkes have not pointed out any conduct outside of the

7

representation. Instead, they argue that Defendants' conduct is exempt from attorney immunity because (i) Mark Hopkins's in-court statements were made outside of his representative capacity and the litigation context, (ii) his in-court statements constituted "bad faith admissions" that waived immunity, and (iii) immunity did not apply because Hopkins did not have the authority to represent Deutsche Bank. (D.E. 27 at 62, 94–97.)

### A. Litigation Context

The Burkes contend that Defendants are not protected by attorney immunity because the conduct they are complaining about took place after the bench trial was over. (D.E. 32 at 27; D.E. 59 at 2.) Thus, they argue, Defendants are exempt from attorney immunity because their conduct took place outside of litigation.

Defendants' complained-of conduct took place during post-trial motions practice before the district court and in connection with the appeal before the Fifth Circuit. The Burkes present no facts to show that Defendants acted outside the litigation context.

### B. "Bad Faith Admissions"

The Burkes argue that Mark Hopkins's statements during the 2017 conference constituted "bad faith admissions" that "waived attorney immunity." (D.E. 59 at 2.) They believe that Hopkins wrongfully withheld evidence. (D.E. 27 at 48–49, 73.) The Burkes present no facts to show that Defendants wrongfully withheld evidence.

8

In any event, Texas law makes clear that "an attorney's conduct may be wrongful but still fall within the scope of client representation." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 485 (Tex. 2015). "[M]erely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney.'" *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 765–67 (5th Cir. 2019) ("Whether an attorney's conduct was in the scope of his representation of a client is a legal question.").

Because the parties agree that the Burkes' allegations stem from conduct within the underlying foreclosure litigation and because Hopkins's only role in that case was in his capacity as a lawyer, attorney immunity applies despite the Burkes' "bad faith" complaints.

C. Attorney-Client Relationship

The Burkes also argue that attorney immunity does not apply because Defendants had no authority to represent Deutsche Bank during the legal proceedings. (D.E. 27 at 62, 83.) The Burkes contend that Defendants must supply a contract or engagement letter to establish their relationship as Deutsche Bank's counsel in the prior litigation. (D.E. 27 at 83.) Because these documents have not been produced, the Burkes argue, Defendants are not immune from liability as they have not established an attorney-client relationship with Deutsche Bank.

9

The Burkes raised this complaint during the underlying litigation and the district court found no basis to remove Defendants as Deutsche Bank's counsel. *See Deutsche Bank Nat'l Trust Co. v. Burke, et al.*, No. 4:11-cv-1658 (S.D. Tex. Oct. 21, 2016), ECF No. 118 ("The court understands that the Burkes have strong feelings about their treatment by the Bank and its representatives during the course of this long litigation. Nevertheless, they do not have veto power over the Bank's choice of counsel."). The Burkes offer no facts to suggest that Defendants were not authorized to act as Deutsche Bank's counsel.

The Burkes also argue that Mark Hopkins's use of words like "I" and "me" imply that he was appearing in court on his own behalf and not as Deutsche Bank's representative. (D.E. 27 at 38; D.E. 32 at 27.) The statements the Burkes point out include: "I'd also point out to the Court," "I believe the Court may have the perception," and "I've had the benefit of reviewing." (D.E. 27 at 93.) The Burkes argue he should have replaced "I" with "my client" or "the bank."

The Burkes' argument is frivolous. Lawyers routinely refer to themselves in the first-person while representing clients in court. The use of first-person pronouns does not terminate the representation.

The Burkes have not provided any facts alleging that Defendants engaged in the type of conduct that may fall outside of the attorney-immunity doctrine. Because all of Defendants' conduct was within the scope of representation and was

"not foreign to the duties of an attorney," attorney immunity applies to all of the Burkes' common law claims. *See Cantey Hanger, LLP*, 467 S.W.3d at 485. Thus, the court recommends that the Burkes' claims of fraud, civil conspiracy, and unjust enrichment be dismissed.

### 4. FDCPA and TDCA Claims

Attorney immunity does not apply if a statute expressly abrogates the defense. Both the Fair Debt Collection Practices Act (FDCPA) and the Texas Debt Collection Act (TDCA) apply to attorneys who regularly engage in consumer-debt collection activity. These statutes prohibit "debt collectors," including some attorneys, from using deceptive methods in debt collection.

#### A. The Burkes' Allegations

Under the two-step inquiry outlined in *Iqbal*, the court first identifies and disregards conclusory allegations. *Iqbal*, 556 U.S. at 664. Legal conclusions, or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled the assumption of truth. *Id.* at 678. Neither "unsupported conclusions . . . of mixed fact and law" nor "unwarranted deductions" are acceptable. *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004); *Stanton v. United States*, 434 F.2d 1273, 1276 (5th Cir. 1970). Second, the court "consider[s] the factual allegations in [the

complaint] to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 664.

The Burkes assert that "Hopkins and his firm Hopkins Law, PLLC, are debt collectors" and refer to Defendants as such throughout the complaint without further explanation. (D.E. 27 at 7, 8, 10, 45, 50, 54, 62, 72, 83, 84, 86, 88, 90, 100.) The Burkes also make dozens of generalized allegations of fraud, abuse, and misconduct. Despite its length, the amended complaint contains few facts pertaining to Plaintiffs' causes of action under the TDCA and the FDCPA.

The court has scoured the record for any factual statements that might arguably support the Burkes' statutory claims. The Burkes moved for leave to file a second amended complaint (D.E. 31), which Judge Hittner denied. (D.E. 37.) Still, the court reviewed all of the Burkes' factual allegations in this analysis, including those first mentioned in their response to the motion to dismiss. The court considers the following to be facts alleged by the Burkes in support of their statutory claims:[2]

- Defendants do not maintain a surety bond (D.E. 27 at 7; D.E. 32 at 36);
- Mark and Shelley Hopkins are experienced, licensed attorneys (D.E. 27 at 8, 89);
- Mark Hopkins's initial notice of appearance in district court listed the name of his law firm as "Hopkins & Williams, PLLC" (D.E. 27 at 28;

---

[2] Record citations in this section are not exhaustive. Many of the recited facts are repeated throughout the Burkes' filings.

12

D.E. 32 at 33), but he lists the name of his law firm in the Fifth Circuit as "Hopkins Law, PLLC";
- Mark Hopkins's notice of appearance was filed in 2015, after the bench trial, and he filed an appeal each time the trial court ruled against Deutsche Bank (D.E. 27 at 28, 31, 32, 40);
- Mark Hopkins filed a motion with the court that stated "Deutsche Bank requests the opportunity to reopen the evidence at trial to provide the court with the wet ink original of the Note" (D.E. 27 at 63–64);
- Mark Hopkins offered as evidence a loan application seeking $539,000 that had been rejected by IndyMac, which differed in many respects from the $615,000 loan application that was eventually approved and that was the subject of the Burkes' lengthy litigation (D.E. 27 at 30, 32);
- Mark Hopkins reviewed the Burkes' mortgage file, which was not included as evidence (*See supra* Part 3);
- during a phone call with the Burkes' attorney, Mark Hopkins accused the Burkes of hiding income and assets (D.E. 27 at 41, 68);
- in court filings, Defendants stated that the Burkes had resources to retain counsel but were nevertheless appointed pro bono counsel (D.E. 27 at 41);
- Defendants sent the Burkes both an acceleration notice and a demand letter dated October 15, 2018 (D.E. 32 at 35);
- Defendants' October 15, 2018 letter was sent in response to the Burkes' Qualified Written Request (D.E. 32 at 34, 36–37);
- the October 15, 2018 letter provided the loan information that the Burkes requested, including the payoff amount of $1.1 million (D.E. 32 at 34, 36–37); and
- the October 15, 2018 letter also asked the Burkes to "please direct [] inquiries to [Defendants'] attention as counsel for Ocwen & Deutsche Bank." (D.E. 32 at 34, 36–37.)

Again, the court has construed the Burkes' pro se amended complaint in the light most favorable to them and has endeavored to ferret out all of the factual statements that might support their statutory claims. Having done so, the court considers the foregoing to be the facts of the case for purposes of its analysis. The

13

court must now determine whether these allegations plausibly give rise to the asserted statutory violations. *See Iqbal*, 556 U.S. at 680.

### B. Liability under the FDCPA & the TDCA

The FDCPA prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Under the FDCPA, a "debt collector" is a person whose principal business is collecting debts or a person who regularly collects or attempts to collect debts for someone else. 15 U.S.C. § 1692a(6).

Similarly, the TDCA prohibits "debt collectors" from collecting debt using harassing, abusive, and deceptive methods. Plaintiffs must show that Mark Hopkins, Shelley Hopkins, and Hopkins Law, PLLC meet the statute's definition of "debt collector" or "third-party debt collector" and engaged in prohibited conduct.

Under the TDCA:

> "Debt collector" means a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts.
>
> "Third-party debt collector" means a debt collector, as defined by 15 U.S.C. Section 1692a(6), but does not include an attorney collecting a debt as an attorney on behalf of and in the name of a client unless the attorney has nonattorney employees who: (A) are regularly engaged to solicit debts for

> collection; or (B) regularly make contact with debtors for the purpose of collection or adjustment of debts.

Tex. Fin. Code Ann. § 392.001 (West).

The Burkes have not set forth sufficient facts to show that Defendants are "debt collectors" under the FDCPA. Their conclusory statements that Defendants are "debt collectors" are not sufficient. They do not provide any facts to demonstrate that Defendants' principal business is collecting debts or that they regularly collect debts or attempt to collect debts for someone else. For the same reasons, Plaintiffs have not set forth sufficient facts to show that Defendants would qualify as "third-party debt collectors" under the TDCA. Defendants may qualify as "debt collectors" under the TDCA.

Even if the Burkes had shown that Defendants are "debt collectors," they have not alleged sufficient facts to show that Defendants engaged in prohibited conduct under either statute. Both statutes prohibit debt collection methods that threaten, harass, abuse, or deceive a debtor. Examples of prohibited methods include: sending a letter to a debtor that looks like it is from a government agency, using obscene or profane language when contacting a debtor, and threatening a debtor with violence or illegal action. *See* 15 U.S.C. §§ 1692d–1692j; Tex. Fin. Code Ann. §§ 392.301–392.307 (West).

The Burkes have not provided any facts that suggest Defendants engaged in prohibited conduct. At best, the Burkes have alleged that Defendants responded to

their requests for information, that Defendants offered parts of the loan file into evidence, and that Defendants zealously represented their clients. None of this constitutes a violation of either statute.

Three of the Burkes' allegations merit specific attention. The Burkes allege that Mark Hopkins offered a falsified loan application into evidence. (D.E. 27 at 30.) The Burkes do not set forth any facts to show that Hopkins knew the loan application was false. Rather, it appears Hopkins was offering documents located in his client's files. Further, the district court rejected Hopkins's request to admit this document as evidence. This does not constitute a violation of either statute.

The Burkes also claim that the original principal of their loan was $615,000, but Defendants, in response to an inquiry from Plaintiffs, said they owed $1.1 million. (D.E. 32 at 26, 34.) Plaintiffs allege no facts to suggest that Defendants' response to their inquiry violates either statute. While Plaintiffs seem to say Defendants were being deceptive, it is more plausible that they were reporting the amount of principal plus interest that their client, Deutsche Bank, reported the Burkes then owed.

The Burkes also argue that Defendants failed to file a copy of a surety bond with the Texas Secretary of State as required by Tex. Fin. Code Ann. § 392.101. This statute only applies to "third-party debt collectors" or credit bureaus engaged in debt collection. The Burkes have not provided facts to show that Defendants are

16

"third-party debt collectors" engaged in debt collection. In any event, the Burkes have failed to show how Defendants' failure to have a surety bond on file caused them any injury.

The court therefore recommends that the Burkes' statutory claims be dismissed.

## 5. Conclusion

Because the Burkes have not alleged any facts against Defendants that may warrant relief, they have not met their burden to defeat the motion to dismiss.

The court finds that an amendment of their complaint would be futile. The Burkes have already filed an amended complaint with leave of court. (D.E. 23, 27.) The Burkes moved for the court's leave to file a second amended complaint, which the court denied. (D.E. 31, 37.) Given the history of this case, the court finds that the Burkes are "unwilling or unable to amend in a manner that will avoid dismissal." *See Great Plains Tr. Co.*, 313 F.3d at 329.

Accordingly, the court recommends that Defendants' motion to dismiss (D.E. 28) be GRANTED and that this case be dismissed with prejudice. All other pending motions (D.E. 38, 40, 54, 55, 56, 61) are DENIED as MOOT.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual

findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on February 24, 2020.

Peter Bray
United States Magistrate Judge